IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                    CIV 11-1135 LH/KBM
                                          CR   08-0683 LH

ERIC M. MADRID,

      Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

Defendant Eric Madrid filed his § 2255 habeas petition *pro se*,[1] and the Court appointed the Federal Public Defender to represent him.  Pending matters include:  Defendant's *pro se* petition; habeas counsel's motion that seeks judgment in Defendant's favor on one claim, and permission to amend others; and the United States' response that requests dismissal of the petition as untimely and for other reasons.  *See Docs. 1, 6, 11, 12, 15.*[2]

Counsel thoroughly briefed their positions, and neither party requests an evidentiary hearing.[3]  I find the present record fully dispositive of the preliminary issues, and an evidentiary

---

[1]  While the federal form labels a § 2255 action as a "motion," the common practice in this Court and the Tenth Circuit, is to refer to the document as a "petition."  *See, e.g., United States v. Chalan,* 438 F. App'x 710, (10th Cir. 2011) ("Daniel Chalan Jr. seeks a certificate of appealability . . . to appeal . . . denial of his 28 U.S.C. § 2255 habeas petition."); *United States v. Jose Garcia-Cardenas,* CIV 08-0382 LH/KBM (Doc. 7 at 2) ("Defendant raises three claims in his § 2255 petition").

[2]  Citations to "Doc." refer to the documents filed in this civil action.  Documents filed in the criminal matter and appeal are cited as parenthetical information.

[3]  If this Court denies Defendant's "motion for judgment on the pleadings, he will move to amend his petition to explain his claims more fully and will move for an evidentiary hearing to present further evidence supporting his claims."  *Doc. 16* at 7.  While the United States contends the present record does not resolve whether Defendant directed counsel to file an appeal or whether petition is timely, it does not request an evidentiary hearing.  *See Doc. 18* at 3, 7.

hearing is unnecessary.  For the reasons below, I recommend that the Court grant Defendant habeas relief on the *Flores-Ortega* claim, find the statute of limitations equitably tolled, and hold the remainder of the action in abeyance pending the outcome of the appeal.  *See Docs. 11, 12.*

# I.  Overview

In November 2007, a 911 caller alerted police to what appeared to be a fight in a parking lot.  The caller described one of the two vehicles, and Bernalillo County police officers responded quickly and stopped the vehicles before they could leave the scene.  Defendant was driving the vehicle the caller described.  The officers were aware Defendant was a convicted felon and had recently been released from the penitentiary.  After observing a rifle case in the back seat, the officers searched the case and found a loaded rifle.  They released Defendant from state custody when he expressed an interest in cooperating to avoid a charge.  But when his cooperation was not forthcoming, in late January 2008, the officers initiated reports that resulted in federal charges for being a felon in possession of a firearm.  *See, e.g., United States v. Madrid,* CR 08-0683 LH (Doc. 51 at 1-4) ("MTS MOO"); *id.* (Doc. 64 at 62-63) ("MTS Transcript"); *id.* (Doc. 95 at 7-10) ("Sentencing Transcript").

## A.  Motion To Suppress & Conditional Plea

After an unsuccessful motion to suppress, Defendant asked that the Court to appoint a new attorney because he did "not feel like [trial counsel] was acting in [Defendant's] best interest."  *Id.* at 56 (Doc. 56).  Presiding District Judge LeRoy Hansen held a hearing where Defendant argued his *pro se* motion, and trial counsel responded.  The Clerk minutes do not detail the substance of the March 31, 2009 hearing, nor was the hearing transcribed.  Judge Hansen also denied the motion without explanation.  *See id.* (Docs. 58, 59).  According to trial counsel, the request was mutual – "both counsel and client, requested that a new lawyer be

appointed." *United States v. Madrid,* No. 09-2262 (Doc. 01018317380 at 2); *see also id.* (Doc. 01018314604 at 2) ("A hearing was held, at which time [trial counsel] requested to be allowed to withdraw.").

Thereafter, Defendant entered a conditional plea:

> **Conditional Plea.**   With the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  ***A defendant who prevails on appeal may then withdraw the plea.***

Fed. R. Crim. P. 11(a)(2) (emphasis added).  During Magistrate Judge Robert Scott's hearing, the parties interlineated and initialed the wavier of rights section of the written plea agreement. As a result of these changes, instead of simply reading that Defendant waived his trial rights and agreed to plead guilty, the section provides that Defendant agreed to plead guilty "pursuant to Rule 11(a)(2) of the Fed. R. Crim. Proc." and that the guilty plea "is conditional and the defendant preserves his right to appeal the Court's denial of his motion to suppress."  *United States v. Madrid,* CR 08-0683 LH (Doc. 73 at 2) ("Plea").

At the plea hearing, trial counsel indicated that Defendant had not yet decided whether to appeal – "we note that the Defendant is allowed, if he so desires, by the government's agreement that this would be a conditional plea and he may appeal the suppression issue if he wants."  *Id.* (Doc. 71) (FTR recording, Monday, August 10, 2009 at 10:03:11-10:03:50).  At sentencing, held almost six weeks later on September 15, 2009, trial counsel noted that Tenth Circuit is not among the courts that recognize "inadvertent possession of a firearm by a felon" and thereby arguably signaled that he believed that an appeal would be unsuccessful.  *Sentencing Transcript* at 5-6.  However, appellate counsel appointed by the Tenth Circuit, argued that the stop of Defendant's vehicle violated the Fourth Amendment because there was no risk to public safety

for the completed misdemeanor reported by the caller.  *See United States v. Madrid,* No. 09-2262 (Doc. 01018376733 at 8-9) (Appellant's Opening Brief).

### B. Untimely Appeal

Judge Hansen sentenced Defendant to the lowest end of the Guideline range, and the Judgment reflecting that 77-month sentence entered on September 17, 2009.  *See Sentencing Transcript* at 15, 17; *United States v. Madrid,* CR 08-0683 LH (Doc. 78 at 2).  As is customary during sentencing, Judge Hansen advised that a notice of appeal must be filed within ten days of the entry of judgment.[4]  Nevertheless, trial counsel did not file a notice of appeal until October 19, 2009.

Ten days after filing the notice of appeal, trial counsel explained that he thought the appeal deadline was within thirty days of the entry of judgment and that he thought he had filed a timely notice of appeal.  In a motion seeking an extension, trial counsel represented to Judge Hansen, and later told the Tenth Circuit, that he was mistaken about the deadline, and asked for an extension due to his excusable neglect.[5]  In other submissions to the Tenth Circuit, trial counsel explained that he does not do appellate work and indicated that he considered himself appointed for trial purposes only.  *See United States v. Madrid,* No. 09-2262 (Doc. 01018317380 at 1)  ("counsel is not an appellate attorney"); *id.* (Doc. 01018305606 at 1) ("Trial counsel does not practice in the Appellate Courts."); *id.* (Doc. 01018314604) ("Trial counsel was appointed to

---

[4]  As of December 1, 2009, "the period to appeal was extended to 14 days."  *United States v. Madrid,* 633 F.3d 1222, 1223, n.1 (10th Cir 2011) (citing Advisory Committee Note for 2009 Amendments for FED. R. APP. P. 4(b)(1)).

[5]  In his motion to the district court, trial counsel asserted that he "made a mistake in thinking that thirty days was the deadline to file the notice of appeal" but that "Rule 4(b)(1)(4) (sic) allows the district court to extend the time [and the] excusable neglect in this case is that trial counsel . . . made a mistake in thinking thirty days was allowed to file the notice of appeal."  *United States v. Madrid,* CR 08-0683 LH (Doc. 85); *see also See United States v. Madrid,* No. 09-2262 (10th Cir. Doc. 01018317380 at 1)  ("There was excusable neglect in this case.  Present counsel . . . mistakenly concluded that the defendant had thirty (30) days to file an appeal, the time allowed in every case in every jurisdiction but apparently not in a federal criminal case.").

represent Madrid at the trial level pursuant to the CJA Act. . . .   Trial counsel does not practice in

the Appellate Courts."); see also *United States v. Madrid,* CR 08-0683 LH (Doc. 85) ("trial

counsel had only filed one notice of appeal in federal court in the last fifteen years").

Judge Hansen granted the extension.  *United States v. Madrid,* CR 08-0683 LH (Doc.

87).  The United States objected, and the Tenth Circuit agreed that an attorney's confusion about

deadlines is inexcusable:

> The merits of the government's challenge can be easily resolved.
> We review the district court's finding of excusable neglect for a
> clear abuse of discretion.  *See United States v. Torres,* 372 F.3d
> 1159, 1161 (10th Cir. 2004).  In district court Mr. Madrid's only
> support for his claim of excusable neglect was that his trial counsel
> thought that he had 30 days in which to file a notice of appeal
> instead of only 10.  But we have held that precisely this error does
> not constitute excusable neglect.  *See id.* at 1160–64.  We therefore
> hold that the district court abused its discretion in granting Mr.
> Madrid an extension of time to file his notice of appeal.  The
> appeal was therefore untimely and must be dismissed.

*United States v. Madrid,* 633 F.3d 1222, 1228 (10th Cir. 2011).  The Tenth Circuit specifically

declined to address other assertions that arose during the course of the appeal, *see id.* at n.2,

which included:

> 3.  . . . .defendant/appellant did not tell counsel he  wanted to file
> an appeal until the ten (10) days had passed.  This was due in part
> because effective communication has been last between counsel
> and client. . . .   both counsel and client, requested that a new
> lawyer be appointed, which request was denied by the District
> Court, after the motion to suppress was denied.
>
> 4.  [Defendant] should not be denied his right to appeal as it was a
> condition of his plea . . . .
>
> 5.   The appellant should not have to go through an extended
> § 2255 process in order to have an appeal heard.

*United States v. Madrid,* No. 09-2262 (Doc. 01018317380 at 1-2).

### C. Habeas Proceedings

Defendant's fifteen *pro se* claims fall into three categories:  (1) trial counsel was ineffective in connection with the late appeal; (2) trial counsel was ineffective in how he handled the motion to suppress; and (3) factual and legal arguments concerning the merits of the motion to suppress.  Defendant asks for three alternative forms of relief, the first of which to have his appeal heard on the merits.  *See Doc.* 1 at 1-4.

In response to the late appeal claim, the United States submitted an affidavit.  In it trial counsel now gives a different reason for failing to timely appeal, and places the blame solely on his client:

> 1.  I was licensed to practice in 1992 and have practiced in federal court since then.  I have always been in sole practice with about **70% of my practice in criminal defense.**
>
> 2.  I have never been sued for malpractice, found to be ineffective assistance (sic) of counsel or disciplined by the disciplinary board.
>
> 3.  **When Mr. Madrid lost his suppression hearing, I consulted with him on this case and whether to appeal the ruling.  He wanted to reserve the right to appeal and so that right was included in the plea agreement.  I also consulted with him as to whether there was any likelihood of reversing the trial court's denial of his motion to suppress.**  A hearing had been held on the issue and at the end of the day the court had found that a weapon was found in plain view when a car door was left open as the police officers were conducting a legal investigation of a reported fight.  **My advice to the client was that the chances of getting the ruling reversed were slim to none.**
>
> 4.  During the period of time between the plea and sentencing, and at the sentencing hearing, the client **seemed happy** that he had not been found to be a career offender or [a]rmed career criminal based on his extensive criminal history.  He **was reminded by me of his right to appeal, but his only concern at the time seemed to be whether the government would return the weapon to this grandfather**, which it did.
>
> 5.  **After sentencing, but past the 10[-]day deadline, the client**

**then informed me he wanted to appeal the denial of his motion to suppress.**  So I filed a notice of appeal and filed a motion to extend the time to file the notice of appeal and it was granted.  **I took responsibility for the untimely filing in the motion to extend the time, due in part to not wanting to come down on the client** and my thinking that the government would not oppose the motion and let Madrid have his appeal.  In that initial filing, I did not state that Madrid waited too long to tell me he wanted to appeal.  **In the extended period of time between the plea and sentencing the client did not tell me he wanted to appeal.**  The notice of appeal was filed and perfected.  Surprising to me, the government then argued to the 10th Circuit that the notice of appeal was untimely.  When I was interviewed by phone by Madrid's appellate counsel, I told that attorney that Madrid did not timely advise me, so that attorney included that information in the 10th Circuit brief.

> 6.  **Had the client affirmatively told me with in the time limit that he wanted to appeal, I would have timely filed the notice.**

*Doc. 11* at 1-2 (emphasis added).

Defendant responded with an affidavit he filed *pro se*.  In it he asserts that he instructed trial counsel to file an appeal at the sentencing hearing and thereafter attempted to contact counsel on several occasions and was "rejected and/or ignored."  *Doc. 12* at 2.  In his unverified *pro se* petition, Defendant also states that, at an unspecified time, he "clearly told [counsel] I wanted an appeal it was one of the biggest factors in negotiating my plea bargain."  *Doc. 1* at 1.

## II.  *Flores-Ortega* Claim

*Flores-Ortega* governs ineffective assistance of counsel claims based on a failure to file a notice of appeal.  *See, e.g., Roe v. Flores-Ortega,* 528 U.S. 470 (2003); *United States v. Garrett,* 402 F.3d 1262 (2005); *United States v. Snitz,* 342 F.3d 1154 (10th Cir. 2003).  Notwithstanding the United States' discussion of decisions that pre-date *Flores-Ortega, see Doc. 6* at 14-16, both parties agree that decision applies here, *see, e.g., Doc. 15* at 3-5, 9-14; *Doc. 18* at 3-4.

*Flores-Ortega* employs two different inquiries depending on whether counsel fails to follow a client's express instructions to appeal, or whether counsel fails to consult with the client about an appeal.  The two inquires can be interrelated, for example, where an attorney consults with a defendant but disregards the client's express instructions, then counsel's conduct is unreasonable and prejudice is presumed.  *See, e.g., Flores-Orgeta,* 528 U.S. at  477-78, 483; *Clayton v. Ward,* 341 F. App'x 421, 423 (10th Cir. 2009).  But here, habeas counsel focuses exclusively on a failure to consult argument, and does so based solely on the factual assertions in trial counsel's affidavit.  *See Doc. 15* at 9-10.  A Fourth Circuit decision indicates that where a client unsuccessfully attempts to contact counsel about an appeal, the lack of an express directive and the duty to consult questions are distinct.  Counsel's claim that Defendant failed to timely advise him to appeal is in the same procedural posture.  *See United States v. Embree,* 169 F. App'x 761, 762-63 (4th Cir. 2006) (reversing denial of § 2255 relief where defendant's plea contained "express reservation of the right to file a direct appeal," defendant asserted he unsuccessfully attempted to contact counsel about a appeal, and district court relied on fact that defendant did not directly ask counsel to appeal, because "district court did not consider" whether counsel had a duty to consult under *Flores-Ortega*).

Since the Court's analysis is based on trial counsel's version of the facts and the criminal and appellate records, and that is conclusive of the legal issues, I find no evidentiary hearing is necessary.  *C.f., United States v. Palermo,* 175 F. App'x 244, 246 (10th Cir. 2006) (district court erred in assessing credibility of defendant's version of events without an evidentiary hearing).

### A.  Deficient Conduct

*Flores-Ortega* defines "consultation" as:  "advising the defendant about the advantages and disadvantages of taking an appeal, ***and*** making a reasonable effort to discover the

defendant's wishes."  528 U.S. at 478 (emphasis added); *see also, e.g., United States v. Kelley,*
318 F. App'x 682, 685 (10th Cir. 2009).  Here, trial counsel talked Defendant about an appeal
only once.  That took place just after the motion to suppress and before the plea.  But, simply
advising a client that the appeal changes were "slim to none" does not satisfy the requirement of
discussing "advantages" and "disadvantages" of an appeal.  *See Kelley,* 318 F. App'x at 686
("We do not believe that Mr. Baker's statement that there would be nothing to appeal meets the
Supreme Court's definition of 'consult.' . . .   Arguably, Mr. Baker's statement informed Mr.
Kelley of the disadvantages of taking an appeal-that he would probably lose.  However, simply
stating that a plea agreement would leave 'nothing to appeal' does not inform a defendant of any
advantages of taking an appeal, nor does it make an effort to determine the defendant's wishes
regarding an appeal, as the Supreme Court requires.").  One "disadvantage" that seems
particularly relevant is Defendant had an attorney who primarily takes criminal cases, but does
no appellate work.

Thus, the lone encounter trial counsel cites as satisfying a consultation does not meet the
definition of what is required under *Flores-Ortega.*   Furthermore even if this post-suppression
meeting qualifies as a consultation, it is not dispositive of, or even particularly relevant to, the
inquiry given the later developments in the case.

Even though the Court would not allow a substitution of counsel, and even though trial
counsel was discouraging any appeal, there is no dispute that Defendant never gave his attorney
specific instructions to forego an appeal.  *See Flores-Ortega,* 528 U.S. at 477 ("a defendant who
explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following
his instructions, his counsel performed deficiently").  To the contrary, after their discussion he
insisted on a conditional plea for that purpose.  At the plea hearing, trial counsel indicated to the

Court that Defendant had not made a definitive decision on whether or not to appeal.  Yet,

counsel made no effort after the plea to "consult" with his client to ascertain his appeal wishes,

much less substantively explain the advantages and disadvantages of doing so.  Instead, at

sentencing he simply "reminded" Defendant of his "right to appeal," and waited passively for

Defendant to approach him.  This is also deficient conduct under *Flores-Ortega.*

> When counsel does not consult with the defendant, we must
> evaluate whether counsel had a duty to consult, "tak[ing] into
> account all the information counsel knew or should have known."
> [*Flores-Ortega,* 528 U.S. at 480].  The duty arises "when there is a
> reason to think either (1) that a rational defendant would want to
> appeal (for example, because there are non-frivolous grounds for
> appeal), or (2) that this particular defendant reasonably
> demonstrated to counsel that he was interested in appealing."  *Id.*

*Kelley,* 318 F. App'x at 685.

That fact the plea was conditional is of paramount importance here.  *See, e.g., Flores-

Ortega,* 528 U.S. at 480 ("Even in cases when the defendant pleads guilty, the court must

consider such factors as whether the defendant received the sentence bargained for as part of the

plea ***and whether the plea expressly reserved*** or waived ***some or all appeal rights.***") (emphasis

added).  By definition, a conditional plea allows a defendant to preview the sentence while

maintaining the option of withdrawing the plea, depending on the outcome of the appeal.

Indeed, the United States concedes that, having entered a "conditional guilty plea reserving his

right to appeal . . . would indicate that Madrid knew he had the right to appeal and was

anticipating the possibility of specifically appealing the Court's denial of his motion to

suppress."  *Doc. 18* at 4.  Here the plea:  (1) expressly reserved an appeal of the unfavorable

motion to suppress; (2) was crafted after trial counsel and Defendant's specifically discussed an

appeal of the motion to suppress; (3) was entered without a definitive decision about whether to

appeal; and (4) was followed by an "extended" period before sentencing during which counsel and his client were not in contact.

These undisputed facts are conclusive of whether trial counsel had a duty to consult Defendant in a timely fashion after sentencing.  *See Flores-Ortega,* 528 U.S. at 477.  Trial counsel had every reason to know this particular client was interested in appealing, and also that a rational client who successfully negotiated a conditional plea would want to appeal.  The fact that they had discussed the possibility of appeal after the motion to suppress did not definitively settle the question of to appeal or not appeal, and that question was not settled at the time of the plea, either.  That Defendant "seemed" happy with his sentence may have impacted his own thinking about whether or not to actually appeal, but that does not impact ***counsel's*** duty to consult and ascertain the client's wishes.  Counsel asserts that they were not "communicating well," which suggests why counsel would have been motivated to ignore the client, but does not excuse counsel's responsibilities.

Counsel's affidavit is significant for what it does not say.  Counsel does not assert that he ***ever*** attempted to contact Defendant after their conversation at the motion to suppress.  Though counsel says he "reminded" Defendant about the appeal at the time of sentencing, significantly, he does not say that they discussed the matters that constitute "consultation," or agreed to do so at a later time.  Nor does he assert that he pressed upon his client the need to act quickly, or explained appeal procedures and any other pertinent issues.  Instead, according to counsel, after their discussion at the motion to suppress, he simply left it to his client to initiate a conversation about the subject of an appeal.[6]

---

[6]  In the Fifth Circuit, "counsel must do more than simply give the defendant notice that an appeal is available or advice that an appeal may be unavailing" and "must advise the defendant not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal.'"  *United States v. Rivas,* 450 F. App'x 420, 422 (5th Cir.  2011) (quotations to *White v. Johnson,* 180 F.3d 648, 652 (5th Cir. 1999) and *United States v. Faubion,* 19 F.3d 226, 231 (5th Cir. 1994) omitted).  The Tenth Circuit

The parties have not cited, and the Court has not found, any decision where a client entered a conditional plea and the attorney failed to appeal.  Nonetheless, based on the clear requirements of *Flores-Ortega,* the undisputed facts, the above reasons, and the authorities cited by Defendant, *see Doc. 15* at 10-11, the Court finds that counsel's conduct was constitutionally deficient under *Flores-Ortega.*

### B.  Prejudice

In failure to consult cases, "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Flores-Ortega,* 528 U.S. at 484.  Whether Defendant would have prevailed on appeal is not conclusive of the prejudice inquiry, but a nonfrivolous ground for appeal can be a factor in the consideration.  *See id.* at 486; *Kelley,* 318 F. App'x at  688.

The plea terms plainly evidence Defendant's interest in filing an appeal.  Also, this is not a situation where Defendant dawdled significantly when faced with the decision whether or not to appeal.  *See United States v. Crowell,* 15 F. App'x 709, 712 (10th Cir. 2001) (when defendant received counsel's letter that recommended filing an appeal, noting the deadline, and instructing him how to do so, the defendant "did nothing for weeks, even months;" he made no attempt to contact this attorney or try to file a late appeal; he asked the district court for appointment of counsel and it wrote "explaining that he could raise his claims in a § 2255 motion and the court provided him with the necessary forms and instructions to file" but he "waited ten years before filing his § 2255 motion").  By his own efforts Defendant made that wish unequivocally known

---

indicated this sort of information might qualify as "advising" under *Flores-Ortega,* but plainly would not be sufficient under the circumstances in this case.  *See United States v. Crowell,* 15 F. App'x 709, 712 (10th Cir. 2001) ("Here, Gaddy informed Crowell by letter of his right to appeal immediately after Crowell's sentencing hearing.  He recommended that Crowell file an appeal, informed him of the appeal deadline, and instructed him how to have the court clerk file a notice of appeal on his behalf.  However, he did not consult with Crowell in person, nor did he make a further attempt to contact Crowell to ascertain his wishes.  Even if we assume for the sake of argument, however, that Gaddy was deficient in failing to make a reasonable effort to discover Crowell's wishes. . . Crowell failed to show that this deficiency prejudiced him").

to counsel, though not soon enough for counsel to comply with the ten-day window.[7]  If lack of awareness by trial counsel about applicable deadlines played any role, that conduct has already been adjudicated inexcusable.  Also, while trial counsel could not conceive of grounds to appeal, appointed counsel in the belated direct appeal did raise and brief a substantive argument.

The Court is persuaded that the reasoning and result reached in *United States v. Rivas*, 450 F. App'x 420, 422 (5th Cir. 2011), compels the same outcome here.  There, counsel did make an effort to consult with the client after sentencing, but counsel's actions were deficient and belated given the short time to appeal.  As such, counsel received his client's written instruction to appeal on the last day to timely do so.  Counsel did not file the appeal.  The Fifth Circuit noted that the client was working under "the basic logistics" of being incarcerated, and held that "counsel failed to fulfill his duty to attempt to determine his client's wishes in a timely manner."  *Id.* at 428-29.  As for the prejudice inquiry, it held that the "proper analysis is . . . whether counsel's failure to consult . . . frustrated Rivas's ability to file a timely appeal."  *Id.* at 429.  Because "counsel's actions actually resulted in Rivas losing his right to appeal," the court found the defendant established prejudice.  *Id.*  As in *Rivas,* trial counsel's failure to timely consult with Defendant about his wishes after sentencing, not only frustrated Defendant's ability to perfect a timely appeal, the reasons he asserted for the neglect doomed any hope of an extension under the law in this Circuit.  See Torres, 372 F.3d at 1163-64 ("In our view, defense counsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for

---

[7]  The record is not clear when Defendant spoke with counsel.  A district court is authorized to extend the "time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)."  FED. R. APP. P. 4(b)(4).  The judgment entered on Thursday, September 17, 2009.  At that time, calculation of the ten-day-period excluded weekends and holidays, but longer periods did not.  *See* FED. R. APP. P. 4, 26(a) (Advisory Committee Notes for 2009 Amendments).  Thus, the tenth day fell on Thursday, October 1, 2009.  Trial counsel filed his notice of appeal on October 19, 2009.  *See United States v. Madrid,* CR 08-0683 LH (Doc. 83).  Thirty days beyond the ten-day deadline, calculated without exclusions, would have fallen on Saturday, October 31, 2009, and given counsel until Monday, November 2, 2009 to file a notice of appeal.  Trial counsel filed his motion for an extension until Thursday, October 29, 2009.  Judge Hansen ruled on the motion on November 3, 2009.  *See id.* (Docs. 85, 87).

relief unless . . . the word 'excusable' . . . is to be . . . read out of the rule.") (internal quotations, citations, and certain alterations omitted).

### C. Remedy

Having met both prongs under *Flores-Ortega,* the appropriate habeas remedy is to vacate the judgment in the underlying criminal matter and immediately renter it, so that Defendant may take a timely direct appeal to the Tenth Circuit.  *See Snitz,* 342 F.3d at 1159 ("To effectuate this right, we direct the district court to vacate and reenter its judgment of conviction and sentence to allow defendant to file a timely appeal.").  The only consideration that would preclude the Court from granting this relief is the United States' argument that the habeas action is untimely.

## III.  Timeliness

The one-year statute of limitations for § 2255 actions runs from different triggering events, and the one mentioned by the parties is "the date on which the judgment of conviction becomes final."  *See* 28 U.S.C. §  2255(f)(1).  Because the Tenth Circuit ultimately deemed trial counsel's justification inexcusable and did not permit a late appeal, the United States contends that the judgment became final on the last day to appeal (September 28, 2009) and that the Clerk filed the *pro se* petition (December 27, 2011) more than two years after "finality."  *See Doc. 6* at 6.  Using this method of excluding the time spent in the Tenth Circuit, and calculates the time frames slightly differently given the exclusion of weekends and holidays and the "anniversary" and "prison mailbox" rules, the Court concludes that the one-year limitations period expired on October 1, 2010.  *See, e.g., supra,* note 9; *United States v. Hurst,* 322 F.3d 1256, 1261-62 (10th Cir. 2003) (adopting anniversary rule); *United States v. Fredette,* 191 F. App'x 711, 713-14 (10th Cir. 2006) (citing *United States v. Gray,* 182 F.3d 762, 765 n. 4 (10th Cir. 1999)) (prison mailbox rule).  The Tenth Circuit dismissed the appeal on February 10, 2011; Defendant delivered his *pro*

*se* petition to a prison official as legal mail officer on December 22, 2011, and the Clerk filed it December 27, 2011.  Thus, if the limitations period did not begin to run until the Tenth Circuit decided counsel's neglect was inexcusable, Defendant filed with some two months to spare.

### A.   Finality & Tolling Pending Outcome Of Fed. R. App. P. 4(b)(4) Motion

There is a dearth of law in this area.  Some decisions tend to support Defendant's view that the statute should not have been triggered until after the Tenth Circuit concluded its decision about the propriety of an extension under Rule 4(b)(4).  For example, the "final judgment" provision for state and federal habeas cases are worded differently, but generally considered parallel.  *Compare* 28 U.S.C. § 2255(f)(1) ("the date on which the judgment of conviction becomes final"), *with id.,* 2244(d)(1)(A) ("the date on which the judgment became final "by the conclusion of direct review or the expiration of the time for seeking such review.").  Defendant cites the Supreme Court decision in *Jimenez v. Quarterman,* 555 U.S. 113 (2009), *see* Doc. 16 at 5-6, which holds that if a state court reopens direct review, then the conviction is not final until those proceedings conclude.  The Sixth Circuit has suggested that an extension under Rule 4(b)(4) may work similarly if the extension is granted.  *See Johnson v. United States,* No. 09-1556, 2012 WL 171379, at **3-4 (6th Cir. Jan. 23, 2012).  However, this case does not present the situation where the Rule 4(b)(4) request was honored.

Also, a recent Seventh Circuit decision allows for the possibility that alternate triggering events might apply in the situations where an appeal is deemed untimely and the habeas claim relies on *Flores-Ortega.  See Ryan v. United States,* 657 F.3d 604 (7th Cir. 2011); *see also* 28 U.S.C. § 2255(f)(2) (triggering event is "date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"); *id.,*

§ 2255(f)(4) (triggering event is "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").  However, defendant does not assert these as alternatives.

Some decisions include the time for filing a motion for extension under Rule 4(b)(4) for federal "finality" purposes, when no appeal is filed.  *See United States v. Cantu-Flores,* No. CIVIL B-08-CV-403, CRIM B-06-CR-664-01, 2009 WL 497157, at *2 (S.D. Tex.  Feb 26, 2009).  But thirty additional days gained by this calculation gives Defendant no advantage unless the Rule 4(b)(4) proceedings also tolled the statute of limitations.  Authority in this Circuit and this district, however, stand for the proposition that the time spent unsuccessfully pursuing a belated appeal will not delay the triggering date for calculating "finality."

> a judgment becomes final when the time for direct appeal has expired.  *See United States v. Prows,* 448 F.3d 1223, 1227-28 (2006) (citing *Moshier v. United States,* 402 F.3d 116, 118 (2nd Cir. 2005)).  While Petitioner did ultimately file a direct appeal, his appeal was ten months late and it was dismissed for that reason. Petitioner's failed appeal does not change the date upon which the statute of limitations began to accrue. *See, e.g., United States v. Smith,* No. 99-2329, slip op. at 1 (10th Cir. 2000) (unpublished) ("Smith argues the one-year limitations period did not begin to run until this court denied her untimely direct appeal.  However, Smith did not pursue her direct appeal within the applicable time limits and her unsuccessful efforts do not toll the statute of limitations."); *see also United States v. Plascencia,* 537 F.3d 385, 387-89 (5th Cir. 2008) (affirming that a judgment becomes final when the time to file a direct appeal expires and that a late direct appeal does not ordinarily change the accrual date for the 2255(f) limitations period).  Were untimely direct appeals sufficient to change the accrual date . . . defendants would be able to flout the one year rule at will simply by filing a late appeal, perhaps even one that was years late.

*Leuvano-Sanchez v. United States,* CIV 11-669 WJ/CG (Doc. 6 at 4-5).[8]  Other courts

---

[8] In *Leuvano,* the district judge overruled objections that did not challenge what is quoted above, and otherwise adopted the proposed findings without discussion.  *Leuvano-Sanchez v. United States,* CIV 11-669 WJ/CG (Doc. 9).  The Tenth Circuit dismissed the appeal based on those objections and did not comment on the tolling aspect of the proposed findings.  *See id.* (Doc. 17-1).

hold the same.[9]

The Tenth Circuit has approved filing a parallel 2255 proceeding in the district court during the pendency of a direct appeal when "extraordinary circumstances" are present. *United States v. Cook,* 997 F.2d 1312, 1319 (10th Cir. 1993). The parties' disagreement about whether the defense should have done so here points up yet another unsettled area of law. For example, the United States relies on the Tenth Circuit's decision in *Prows* for the proposition that Defendant could have invoked parallel proceedings, but that decision involved an appeal of the sentence by the United States. *See Doc. 6* at 8-9 (citing *United States v. Prows,* 448 F.3d 1223, 1228 (10th Cir. 2006)). Habeas counsel relies on the Tenth Circuit's decision in *Rangel,* which involved a habeas issue concerning the integrity of the government's prosecution. *See Doc. 16* at 6 (citing *United States v. Rangel,* 519 F.3d 1258 (10th Cir. 2008)). Courts distinguish these two decisions on their facts and follow the general rule that a § 2255 motion will be considered premature if filed while an appeal is pending. *See, e.g., Cook,* 997 F.2d at 1319 (and authorities cited therein); *Williams v. Warden,* No. 11–CV–0264–CVE–PJC, 2011 WL 1794069, at *2 (N.D. Okla. May 1, 2011) (same; distinguishing *Prows*); *United States v. Swisher,* Nos. CV-09-55-S-BLW, CR-07-182-S-BLW, 2009 WL 1149445, at * 2 (D. Idaho Apr. 27, 2009) (distinguishing *Rangel* and *Prows*). The Tenth Circuit recently reiterated that while a direct appeal is pending, a § 2255 motion is premature. *See United States v. Hunter,* No. 11–1367, 2012 WL 266923, at *1 (10th Cir. Jan. 31, 2012) (district court denied § 2255 petition without

---

[9] *See, e.g., Philentrope v. United States,* NO. 8:08-CR-530-T-27TGW, 8:11-CV-2177-T-27TGW, 2011 WL 4913569, at * 2 (M.D. Fla. Oct. 14, 2011) ("The Eleventh Circuit dismissed Petitioner's December 22, 2009 notice of appeal as untimely. An untimely filed notice of appeal does not toll the one year limitation period contained in § 2255.") (citing Tenth Circuit's decision in *Smith* and earlier decision in Middle District of Florida); *Mubang v. United States,* 2011 WL 3511078 (D. Md. Aug. 9, 2011) (citing *Benavides v. United States,* No. 9:09cv104, 2010 WL 998980, at *3 (E.D. Tex. Jan. 19, 2010), *Pena v. United States,* No. 05–137-T, 2009 WL 196110, at *2 (D.R.I. Jan. 23, 2009), and *United States v. Black,* No. 3:04–cv–547–MEF, 2006 WL 2547339, at *3 (M.D. Ala. Aug. 31, 2006)) (courts that reason allowing finality to be triggered by untimely appeals wholly undermines limitations period).

prejudice); *see also Prows,* 448 F.3d at 1226 (district court dismissed the premature § 2255

petition without prejudice).[10]

     No decision cited by the parties, or uncovered by the Court, considers the circumstances

here "extraordinary" and allows a premature filing to protect the habeas limitations period in the

event counsel's conduct is found inexcusable and winds up forfeiting a direct appeal.  In the state

habeas arena, under certain circumstances habeas petitioners can institute a protective filing in

federal court while state proceedings are ongoing.  The federal court can invoke the "stay and

abeyance" procedure outlined in *Rhines* so that the petitioner will not run afoul of the statute of

limitations yet not interfere with the ongoing state proceedings.  *See Rhines v. Weber,* 544 U.S.

269 (2005).  The protective filing/stay and abeyance procedure has yet to be authorized in

federal habeas proceedings generally, or under the circumstances presented by this case.[11]

### B.  Equitable Tolling

     "Equitable tolling applies to the timeliness provision in the federal habeas statute."

*United States v. Sells,* 391 F. App'x 700, 701 (10th Cir. 2010) (citing *Holland v. Florida,* ___U.S.

___, ___, 130 S. Ct. 2549, 2560 (2010)).  "[T]he circumstances of a case must be 'extraordinary'

before equitable tolling can be applied."  *Holland,* 130 S. Ct. at 2564.  While "a garden variety

claim of excusable neglect, . . . such as a simple miscalculation that leads a lawyer to miss a

filing deadline, . . . does not warrant equitable tolling," *Holland,* 130 S. Ct. at 2564 (internal

quotations and citations omitted), trial counsel's asserted mistake about the appeal deadline is

---

[10] The Tenth Circuit holds that dismissals without prejudice on ripeness, lack of exhaustion or mootness grounds do not trigger the constraints on successive petitions in the event of another filing.  *See Robinson v. Ledezma,* 399 F. App'x 329, 330 n. 2 (10th Cir. 2010) (and authorities cited therein).

[11] Very recently one court approved the *Rhines* procedure for § 2255 petitions that challenge state convictions for federal sentencing purposes.  *See, e.g., Purvis v. United States,* 662 F.3d 939 (7th Cir. 2011).

but one factor here.  The confluence of events and circumstances in this case warrant tolling on the basis of the record as it presently stands.

Trial counsel's failure to consult gave rise to the late notice of appeal, and abandonment of a client can constitute equitable tolling.  *See United States v. Jordan,* No. 11–1108, 2012 WL 476491, at *2 (10th Cir. Feb. 15, 2012) ("We acknowledge Mr. Jordan's argument that the conduct of his appointed counsel [abandoning client two weeks before the deadline to file a § 2255 petition] satisfies the requirements for equitable tolling laid out by the Supreme Court in *Holland.*").  The Government played a role as well.  It agreed to a plea conditioned on Defendant's ability to appeal the adverse motion to suppress, yet when that not unexpected result materialized, it took advantage of counsel's procedural misstep to avoid the bargain it had made and which the Court had approved.  Simply because the Government could legally take the position of dismissing the appeal does not mean that it was required to elect that strategy.  The Tenth Circuit did not take a position on the equities of the Government's chosen strategy when it dismissed the appeal.  When timeliness is challenged and properly presented, it had but no choice and "*must* enforce the time bar."  *Madrid,* 633 F.3d at 1225 (emphasis original).  In short, trial counsel created the situation and the Government sealed Defendant into a procedural thicket.  None of these reasons are attributable to Defendant.

Even if the attempted appeal is considered collateral, Defendant in fact had representation from sentencing through denial of the excusable neglect and dismissal of the appeal.  *See Sells,* 391 F. App'x at 701 (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987)).  Trial counsel filed the late notice of appeal in October 2009, Judge Hansen granted an extension by early November, and the Tenth Circuit appointed appellate counsel by late December.  As of October 1, 2010, when the statute of limitations expired, appellate counsel had

been appointed for some nine months, briefing in the Tenth Circuit had been completed for four months, and oral argument had been concluded for almost two and a half months.  The Tenth Circuit's decision did not issue its decision until February 10, 2011, some four months after the statue of limitations expired.  During this time, trial counsel and appellate counsel, were well aware, evidenced by their assertions in the Tenth Circuit, that if the late filing were not excused and the appeal did not proceed on the merits, the only other recourse would be to pursue habeas relief under § 2255.

There is no suggestion that Defendant's attorneys gave Defendant any incorrect or misleading advice about the propriety of filing a parallel § 2255 proceeding.  *Phillips v. Addison,* 448 F. App'x 817, 819 (10th Cir. 2011)*; see also Dominquez v. Hatch,* 440 F. App'x 624, 626 (10th Cir. 2011).  Nor is there any assertion that Defendant's appellate counsel intentionally deceived Defendant as did the "unscrupulous attorney in *Fleming* who intentionally deceived his client into believing he was filing a [2255] petition."  *Phillips,* 448 F. App'x at 819.  By the same token, there is no indication that any attorney discussed the statute of limitations conundrum with Defendant.  Again, counsel's inaction in the face of the dilemma is not attributable to Defendant.

Even if they had addressed the situation and made Defendant's unattractive options available to him,[12] the "diligence required [on the part of a defendant] for equitable tolling purposes is reasonable diligence, . . . not maximum feasible diligence."  *Holland,* 130 S. Ct. at 2565.  Here, Defendant's actions were diligent at every turn.  Even in the face of counsel's

---

[12] One way to preserve the habeas statute of limitations would have been to concede the United States' dismissal position and timely filed before the statute expired, thereby forfeiting the appeal and any argument in habeas that he was prejudiced.  The other would have been to institute parallel habeas proceedings and urge this Court to adopt this novel approach that no case law compels or authorizes or even suggests is permissible – allowing a premature filing to preserve the statute of limitations in the event trial counsel's conduct is found inexcusable and thereby forfeits the direct appeal reserved by the defendant in a conditional plea.

inaction after sentencing, Defendant took the initiative to jump start the appeals process and avail himself of the benefit he bargained for and secured.  Even assuming diligence expects Defendant to have acted on this own and initiated § 2255 proceedings while he under representation by counsel, under the circumstances here, Defendant cannot be faulted for waiting until the Tenth Circuit ruled.  For the reasons already detailed, if he had filed a premature § 2255 petition, no authority authorized the Court institute a *Rhines*-like procedure and binding authority to the contrary would have compelled this Court dismiss any such attempt.  Defendant thus reasonably waited to see the outcome of the attempted appeal and he filed his *pro se* petition well within a year after the Tenth Circuit proceedings concluded.  *Compare United States v. Galindo,* 449 F. App'x 711, 712 (10th Cir. 2011) (defendant was not diligent because "he apparently took no action to inquire regarding the status of his direct appeal [that counsel did not file] and because he waited two full years to file his habeas petition"); *Sells,* 391 F. App'x at 701 ("Waiting over a year past the limitations deadline to determine whether counsel filed a motion does not support diligence.").

*Holland* reminds that Courts exercise their equitable powers on a case-by-case basis, with flexibility instead of over-rigidity.  130 S. Ct. at 2564-65.  True, counsels' conduct and the Government's conduct was not of the seriously egregious sort normally cited as grounds for tolling, but Defendant also did not lack the diligence required of those to whom the Court grants tolling.  Defendant found himself in a situation created by trial counsel, exacerbated by the Government, and tied his hands at any attempt to circumvent the situation with novel arguments. The confluence of these attorney choices and unsettled state of the law is what sets this case apart as unique and extraordinary.   Those circumstances were beyond Defendant's control and unavoidable.

## IV.  Procedural Posture After Partial Disposition

Relief on the failure to appeal issue may moot the rest of Defendant's claims.  As such, the Court recommends bifurcating the proceedings.  As such, partial relief should enter now, and the Court should reserve on the remaining issues until the appeal concludes.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's motion for judgment on the pleadings (Doc. 15) be granted in part and reserved in part;

2.  The present record be found to conclusively establish these preliminary issues:

> (a) an *Flores-Ortega* violation, the appropriate relief for which is for the district court to vacate and reenter its judgment of conviction and sentence so Defendant may file a timely direct appeal; and

> (b) Defendant is entitled to equitable tolling.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES CHIEF MAGISTRATE JUDGE