IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff - Respondent,

v.                                                                                                    CIV 11-1135 LH/KBM
                                                                                                                             CR 08-0683 LH

ERIC MADRID,

    Defendant - Movant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      In this action Defendant-Movant Eric Madrid ("Madrid") seeks to set aside his 2009 conviction for being a felon in possession of a firearm.  In his Amended Motion to Vacate Under 28 U.S.C. § 2255 *(Doc. 52)*, Madrid asserts that his lawyer's failure to discredit the testimony of law enforcement officers at a hearing on Madrid's motion to suppress evidence violated his right under the Sixth Amendment to effective assistance of counsel.  Madrid further contends that there are disputed issues such that he is entitled to an evidentiary hearing on the merits of his ineffective assistance of counsel claim.  Motion for an Evidentiary Hearing *(Doc. 53)*.  For the reasons set forth below, however, the Court finds that the record conclusively establishes that Madrid is not entitled to relief under 28 U.S.C. § 2255, and he therefore has no entitlement to an

evidentiary hearing.  Thus, after careful review of the submissions of the parties, I recommend that both motions be denied.

## I. Background

### a. Mr. Madrid's arrest and indictment

In November 2007, an anonymous 911 caller reported an ongoing altercation in the parking lot of the Rinaldi Apartments in Bernalillo.  The police dispatcher reported that there was a fight in progress and that the caller said that one of the individuals involved in the fight got into a vehicle and fled the scene after seeing a police car pass by the parking lot.  Lt. Stoyell stopped a vehicle matching the caller's description near the scene of the alleged fight, and Madrid was behind the wheel.  Thereafter, Officer Sanchez arrived on the scene, and he observed a rifle case in the back seat of Madrid's vehicle which was ultimately found to contain a loaded firearm.  The officers released Madrid (who was a convicted felon and therefore subject to criminal liability for possessing the rifle) after he offered to cooperate in a drug investigation.  But when Madrid did not cooperate, the felon in possession of a firearm charge was filed.

### b. Madrid's Motion to Suppress the Rifle

Madrid, through his counsel Cliff McIntyre ("McIntyre"), filed a Motion to Suppress the loaded rifle and ammunition.  CR 08-683 LH at Doc. 34.  McIntyre first argued that the police officers had no reasonable suspicion to stop Madrid's vehicle because the 911 caller had not actually reported a fight in progress, and thus there was no criminal conduct to justify the stop.  It was clear, however, that the dispatcher had indicated to officers a report of a fight in progress and that the officers reasonably relied on that information.

Even if there was indeed reasonable suspicion to conduct the stop, McIntyre argued in the alternative that the police officers unreasonably extended the time of Madrid's detention to such an extent that it was no longer justified under *Terry v. Ohio*, 392 U.S. 1 (1968).

The Motion to Suppress made assertions of material fact that contradicted the police officers' version of events.  For example, Madrid insisted that he was detained for at least 24 minutes <u>before</u> Officer Sanchez arrived and observed the rifle case; the police officers maintained that Madrid's detention began when Officer Sanchez saw the rifle case or shortly thereafter.  The Motion to Suppress also asserted that Officer Sanchez "couldn't see inside or look through an open rear window" to observe the rifle case and instead had found the case only after opening a door and rummaging through the vehicle's contents well after Madrid had been detained without his consent.  *See* CR 08-683 LH, Doc. 34 at 6–7.

At the suppression hearing, Madrid testified as follows:  Lt. Stoyell cut him off, almost causing an accident; Lt. Stoyell then ordered Madrid to turn off the car, throw out the keys, exit the vehicle, get on his knees, interlock his fingers and remove his shirt, even though it was "freezing cold.;" and he was then handcuffed and seated at a curb, where Stoyell questioned him for about twenty minutes before the weapon was discovered.

At the conclusion of the hearing, Judge Hansen denied Madrid's Motion to Suppress, summarizing his findings of fact and conclusions of law as follows:

> Lt. Stoyell's stop and ensuing detention of Defendant were both supported by reasonable suspicion.  The length of the detention was reasonable.  Officer Sanchez observed the rifle case in plain view. At the time he searched the car, Officer Sanchez had probable

>cause to believe Defendant had committed a crime and that the rifle case contained evidence of that crime. The officers therefore did not violate Defendant's Fourth Amendment rights, and Defendant's motion to suppress must be denied.

CR 08-0683 LH, Doc. 51 at 9.

### c. Madrid's appeal to the Tenth Circuit

Madrid entered a plea of guilty to the felon-in-possession charge conditioned on his right to appeal Judge Hansen's denial of his Motion to Suppress. But Madrid's attorney failed to file a timely notice of appeal. The Government argued that Madrid's appeal should be dismissed on this basis, and the Tenth Circuit obliged. *See United States v. Madrid*, 633 F.3d 1222 (10th Cir. 2011).

Madrid then filed a petition for a writ of habeas corpus alleging McIntyre provided ineffective assistance of counsel by failing to file a timely notice of appeal. I agreed, concluding that under *Roe v. Flores-Ortega*, 528 U.S. 470 (2003), McIntyre provided ineffective assistance of counsel by failing to timely file notice of an appeal. *See* CIV 11-1135 LH, Report and Recommendations, Doc. 20.

Judge Hansen duly vacated and re-entered the judgment against Mr. Madrid, and he timely filed a notice of appeal. *See* CR 08-683 LH, Docs. 118 & 120. After finally reaching the merits of Madrid's appeal, the Tenth Circuit affirmed Judge Hansen's denial of the Motion to Suppress. *See United States v. Madrid (Madrid II)*, 713 F.3d 1251 (10th Cir. 2013).

In his appeal, Madrid raised, and the Tenth Circuit rejected, the following contentions: (1) Judge Hansen clearly erred in finding that the police officers did not know that, in fact, no fight had occurred in the Rinaldi Apartment complex parking lot, *id.*

4

at 1256–57; (2) Judge Hansen should not have attached any weight to Madrid's decision to flee the parking lot because the police officer was not aware of this fact when he made the stop, *id.* at 1257; (3) the relatively innocuous crimes the police officers were investigating did not justify the stop, *id.* at 1257–58; and (4) the anonymous 911 caller was not sufficiently reliable to create reasonable suspicion to support the stop.  *Id.* at 1258–59.

### d. Madrid's Amended Motion to Vacate *(Doc. 52)*

After the Tenth Circuit affirmed Judge Hansen's denial of suppression motion, Madrid amended his petition for habeas relief.  In his Amended Motion to Vacate, Madrid argues that McIntyre "[i]nadequately develop[ed] both the underlying facts and the legal issues presented by officers' stop of Mr. Madrid."  *Doc. 52* at 3.

Madrid states that at the suppression hearing, one of the arresting officers "conceded on cross-examination the possibility that he ordered Mr. Madrid to exit his car before he began speaking with him and that he was questioning Madrid away from the car when [the other officer] discovered the rifle case. . . ."  *Doc. 52* at 4.  Madrid contends that McIntyre could have further discredited the officers' testimony that Madrid was forced to exit the car at the same time or before the rifle was discovered by playing a tape recording of an interview with the officer when he allegedly conceded as much.

Madrid's second argument for habeas relief asserts that McIntyre "failed to argue that the stop in this case was unreasonable because the officers were merely investigating the crimes of "public affray" and "disorderly conduct," which under New Mexico law are petty misdemeanors."  *Doc. 52* at 4–5.  Madrid maintains that there is a

5

reasonable probability Judge Hansen would have suppressed the rifle if McIntyre had "fully developed th[is] underlying legal issue[]." *Doc. 52* at 5.

## II. Discussion

### a. Standard of Review for 28 U.S.C. § 2255 claims

Under 28 U.S.C. § 2255, a court is permitted to vacate, correct or set aside a sentence that was "imposed in violation of the constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." 28 U.S.C. § 2255.

In order to obtain relief under 28 U.S.C. § 2255 for ineffective assistance of counsel, a defendant must show that his lawyer's performance was (1) objectively unreasonable, and (2) but for the lawyer's ineffective assistance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court must accept the truth of the movant-defendant's factual allegations unless they are frivolous in light of the record. *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

There is no entitlement to an evidentiary hearing on a motion to vacate a sentence under 28 U.S.C. § 2255 if the court determines that the record conclusively establishes that the defendant is not entitled to the requested relief. 28 U.S.C. § 2255(b). This inquiry by necessity requires the Court to evaluate the merits of Madrid's claims.

### b. Madrid's Ineffective Assistance of Counsel Claims

Madrid first asserts that McIntyre was constitutionally ineffective in failing to properly impeach the testimony of police officers who discovered the rifle in his car that ultimately lead to his arrest and conviction.[1]

### i. McIntyre's reference to, and non-use of, a tape recording

Madrid contends that his own version of events leading to his arrest was more credible than that of the officers, and that McIntyre could have buttressed Madrid's version of events by confronting the officers with inconsistent statements in a tape recording allegedly made by an investigator McIntyre hired.  The Government argues that McIntyre <u>did in fact</u> seek to impeach the officers with inconsistent prior statements. At the suppression hearing McIntyre's cross-examination of Lt. Stoyell, the following exchange occurred:

> Q:  Why did you take him out of the vehicle, sir?
> A:  For my safety at that point.
> Q:  What was unsafe about him being in the vehicle when he was surrounded by police officers?
> A:  Well, when Officer Sanchez advised me that there was a weapon, for my safety and his, I –
> Q:  But Officer Sanchez advised you that there was a weapon after you took him out of the vehicle.  That's what you just testified to five minutes ago.
> A:  When he advised me there was a weapon case in the vehicle, I had him exit the vehicle.
> Q:  Okay.  You didn't have him exit the vehicle before you were advised there was a weapon?

---

[1] Madrid proffers that McIntyre's ineffectiveness also prevented the court from understanding and correctly applying the law. But the Tenth Circuit's *de novo* review of the trial court's legal conclusions cured any error of this sort, so Madrid's claim on this point necessarily fails *Strickland*'s second prong.

7

> A:  I don't think so.
> Q:  But you talked with my investigator, correct?
> A:  Yes.
> Q:  Okay.  And my investigator, **when you talked to my investigator, and <u>I've got the tape here if I need to refresh your recollection</u>, you told my investigator you weren't around the vehicle when the weapon was discovered.**  You were away from the vehicle talking to Mr. Madrid.
> A:  I can't say that I recall him [Officer Sanchez] actually going - - taking the gun out of the vehicle.  I was probably talking to Mr. Madrid.
> Q:  Away from the vehicle?
> A:  That's correct.

*Transcript*, CR Doc. 64 at 60-61 (emphasis added).

The Government argues that this excerpt demonstrates that to the extent that Lt. Stoyell's credibility could be challenged with prior inconsistent statements, McIntyre confronted Stoyell with those statements.  This argument, however, fails to address McIntyre's subsequent failure to offer the recording into evidence.

The Government has consistently maintained that the officers never deviated from their recollection that Officer Sanchez arrived on the scene at almost the same time as Lt. Stoyell.  The officers' reports and testimony at the suppression hearing never contradicted the Government's core proposition that the rifle <u>case</u> was observed at that time or shortly before Lt. Stoyell ordered Madrid to exit his vehicle.

Throughout the suppression hearing, McIntyre inarticulately attempted to extract concessions from Lt. Stoyell and Sanchez that Madrid was ordered to exit his car <u>before</u> they perceived any danger to their safety, or at least that they could not recall the exact sequence of events that night.  But what Madrid calls "inconsistent statements" are in fact the officers' attempts to distinguish among three different events:  (1) when Officer Sanchez told Lt. Stoyell that he had spotted a gun case in Madrid's vehicle, (2) when

8

Officer Sanchez searched the vehicle and retrieved the case, and (3) when Officer Sanchez opened the case and discovered the firearm.  The only sequence of events that would have arguably implicated suppression of the firearm is if Sanchez's discovery of the rifle case, which indicated a potential threat to officer safety, fell after Madrid's detention or arrest.  Regardless, insofar as Lt. Stoyell's testimony could be seen as inconsistent, McIntyre confronted Stoyell with that inconsistency

Reasonable minds may differ on whether or not McIntyre should have played the tape recording of Lt. Stoyell's interview with the investigator after he asserted that he had such a tape in his possession.  The Government even speculates that McIntyre fabricated the tape's existence as a bluff, but I will assume the tape existed for the sake of argument.  Knowing what the tape contained could help determine whether McIntyre should or should not have confronted Lt. Stoyell with its contents.  The fact that the tape cannot now be found, however, does not entitle Madrid to the benefit of the doubt given *Strickland*'s presumption of effectiveness.

Moreover, *Strickland* requires me to defer to McIntyre's decision not to do so. McIntyre was in the best position to judge whether doing so would have discredited his testimony or merely reinforced Lt. Stoyell's consistent, if not exactly clear, recollection of events.  In other words, a disagreement as to the best trial strategy does not require a finding of ineffectiveness – such second-guessing is the entire point of *Strickland*'s presumption of effective assistance of counsel.  466 U.S. at 690.

Madrid relies heavily on a memorandum *(Doc. 53-1)* prepared by the private investigator who interviewed Lt. Stoyell and purportedly taped that interview.  In the memorandum, the private investigator states that Lt. Stoyell told him that he "exited

9

[Madrid] from the vehicle and was questioning him . . . [and that] while questioning Mr. Madrid, Officer D. Sanchez advised him that there was a weapon in the back seat." *Id.* at 2.  Madrid contends that McIntyre "inexplicably and unreasonably failed" to use the tape to introduce inconsistent statements in order to prove that the stop exceeded the bounds of a permissible *Terry* stop.  *Doc. 53* at 15.

    I reject this argument for three reasons.  First, the memorandum is not a verbatim transcript of the audio recording (assuming such a recording was made).  Second, the memorandum fails to distinguish between when Officer Sanchez first observed a rifle case in plain sight from when he opened the case and discovered the firearm.  Third, this evidence does not make out any plausible grounds for finding a *Terry* violation.  As the Government points out, the Supreme Court has held that any occupant of a vehicle may be ordered to step out of a vehicle during a lawful traffic stop even in the absence of any particularized suspicion of dangerousness.  *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997).  Thus, the timing of the removal of Madrid from his vehicle is legally irrelevant under *Terry*.

    In the alternative, Madrid contends that the sequence of events as related in the private investigator's memorandum and allegedly taped interview nevertheless had evidentiary value as impeachment material.  *See* Reply at 3.  Madrid maintains that McIntyre's failure to produce the reference audiotape or to call his investigator to testify regarding his interview of Lt. Stoyell amounts to ineffective assistance of counsel.  Because, as seen below, Madrid fails to meet the second prong of the *Strickland* analysis, the Court need not further address this contention.

### ii. Even if McIntyre was ineffective, Madrid cannot show that he was prejudiced by McIntyre's ineffective assistance.

Even after I permitted discovery in this Section 2255 action, specifically the depositions of both Attorney McIntyre and Investigator Sandoval, there is no evidence in the record (besides McIntyre's unsworn statement at the suppression hearing) that the investigator actually audiotaped his interview with Lt. Stoyell or that such a recording would have contradicted the officer's testimony at the suppression hearing. It is undisputed that no such tape has been found.

As to Investigator Sandoval's memorandum, it is not an unfiltered, verbatim account by the officer. *See* CR Doc. 155-1. Rather, it is the investigator's recounting of his interview. Of greatest significance, the memorandum refers only to the finding of the "weapon" and makes absolutely no reference to the case in which it was contained. It therefore fails to distinguish between the timing of when the gun case was spotted in the vehicle, when that case was retrieved from the vehicle, and when the case was opened and the weapon discovered within. Simply put, I agree with the Government that the memorandum does not discredit Lt. Stoyell's testimony that he had removed Madrid from the car at the same time or just after Officer Sanchez first observed the rifle case.

True, the memorandum does assert that Lt. Stoyell stated to the investigator that "once making contact with Mr. Madrid, he exited him from the vehicle" and questioned him at that time about his presence at the scene. *Id.* at 1. But as noted above, <u>even without the memorandum</u>, McIntyre elicited from Lt. Stoyell a concession that he <u>may</u> have "exited" Madrid from the vehicle before the rifle case was seen by Officer

Sanchez.[2]  The officer testified that at the time of the stop to investigate what he thought was a fight in progress, he was aware that Madrid had "done time" in the penitentiary, it was dark, and officers conducting a lawful investigative stop may order the driver and passengers out of a vehicle as a matter of officer safety.  *Maryland v.* Wilson, 519 U.S. 408, 415 (1997).  For all of these reasons, use of the memorandum at the suppression hearing would not have changed the outcome, and McIntyre was not ineffective in choosing not to do so.

Finally, and most importantly, Judge Hansen considered and rejected much stronger evidence that Lt. Stoyell and Officer Sanchez were untruthful about when the latter arrived on the scene:  CAD (Communication Automatic Dispatch) logs showing Sanchez arriving on the scene almost 20 minutes after Stoyell.  Judge Hansen heard testimony that it is police officers' normal practice to record when they arrive on the CAD log.  Officer Sanchez explained the inconsistency by saying that he stepped out of the car as soon as he arrived, and Judge Hansen accepted this explanation.  *See* CR Doc. 51 at 2 ("Officer Sanchez arrived a minute or two [after Stoyell]; however, contrary to standard procedures, he neglected to report to dispatch that he was "On Scene" until 8:20 p.m., because he immediately left his vehicle upon arriving.").  In sum, Judge Hansen discounted that stronger impeachment evidence in the CAD log, and the Tenth Circuit upheld that decision.  *See United States v. Madrid*, 713 F.3d 1251, 1257 (10th Cir. 2013).  Given that the record already contained evidence impeaching the officers'

---

[2]  Q.  Okay.  And is it your testimony that you did not ask him to exit the vehicle before you even approached the vehicle?
A.  I don't believe I did.
Q.  You could have, then?
A.  It's possible, but from my recollection, I had him step out after Officer Sanchez advised me of the other situation.

*Transcript*, CR Doc. 64 at 59:4-9.

truthfulness, it is difficult to discern how further cumulative evidence in the form of the tape or investigator's testimony would have changed Judge Hansen's –or the Tenth Circuit's – conclusion.

Madrid also argues that McIntyre was ineffective by failing to develop certain legal issues. But as with Madrid's first argument, even if McIntyre is presumed ineffective, Madrid cannot show he was prejudiced because the Tenth Circuit addressed Madrid's legal arguments de novo. See Madrid, 713 F3d at 1257

### III. Conclusion

In summary, Madrid bears a heavy burden in demonstrating that he was denied effective assistance of counsel and that this denial prejudiced his case. He did so with his first motion when he demonstrated that he was denied the opportunity to appeal the suppression ruling, and that has been remedied. As to the new allegations of alleged ineffectiveness, however, the Court finds that the record conclusively establishes that Madrid is not entitled to relief under § 2255. Having failed to meet his burden under *Strickland* of showing ineffective assistance and resulting prejudice, I deny Madrid's request for an evidentiary hearing and recommend that Judge Hansen deny his motion to vacate his sentence.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE